UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6032-CR-ZLOCH\SELTZER

UNITED STATES OF AMERICA )
)
)
v. )
)
)
LIONEL HANNA, )
)
Defendant. )
_____ )

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS TO SUPPRESS

The United States of America, by and through the undersigned Assistant United

States Attorney for the Southern District of Florida, files this response to the

defendant's motions to suppress physical evidence and statements and shows that the

same should be denied for the following reasons:

I. AN INVENTORY SEARCH OF A CAR AFTER THE DRIVER WAS ARRESTED
AND THE DRIVER WAS NOT THE OWNER OF THE VEHICLE IS A LEGALLY
PERMISSIBLE SEARCH TO INSULATE A POLICE DEPARTMENT FROM
LATER FALSE CLAIMS OF IMPROPRIETY AND FRIVOLOUS CIVIL
LAWSUITS.

II. CUSTODIAL STATEMENTS MADE SPONTANEOUSLY ARE NOT
SUPPRESSIBLE AS VOLUNTARY STATEMENTS ARE NOT WITHIN
THE PROTECTED PURVIEW OF THE MIRANDA OPINION.

III. PROBABLE CAUSE EXISTED TO SUPPORT THE ISSUANCE OF A
SEARCH WARRANT FOR THE DEFENDANT'S RESIDENCE BECAUSE
OF THE DEFENDANT'S OWN ACTS OF FERVENT FLIGHT TO HIS
RESIDENCE, THE PRESENCE OF 5 KILOGRAMS OF COCAINE
WITHIN THE TRUNK OF THE CAR THE DEFENDANT WAS DRIVING,
THE INTENDED DESTINATION OF SAID NARCOTICS BEING THE

-1-

HOME SEARCHED, AND THE ANONYMOUS NEIGHBOR'S
TELEPHONE CALL TO THE POLICE DISPATCHER CORROBORATED
BY THE POSITIVE ALERT OF A CANINE TRAINED IN THE DETECTION
OF NARCOTICS TO THE PRESENCE OF THE SAME WITHIN THE
DEFENDANT'S RESIDENCE.

Wherefore, for the foregoing reasons, the United States of America respectfully

requests that this Honorable Court issue an order denying the defendant's motions to

suppress physical evidence and statements.

## FACTS

On January 7, 2000, while transporting five (5) kilograms of cocaine inside the

trunk of the car the defendant was driving[1], Hanna was the instigator of two hit and run

accidents. The second hit and run accident was witnessed by Fort Lauderdale Police

Department Sergeant Frank Miller (hereinafter referred to as "Miller") in a marked unit

approaching the traffic signal at the intersection of the Interstate 95 north off ramp with

eastbound on Broward Boulevard. The defendant stopped at the intersection of

eastbound Broward Boulevard and 11th Avenue when Miller activated his emergency

lights. The defendant was the sole occupant within his car. After giving Miller his

drivers' license[2], the defendant fled in his car from Miller who had been interviewing the

other driver involved in a hit and run accident the defendant caused. Miller pursued

Hanna who led Miller to the vicinity of the defendant's house. Hanna parked at 412 NW

---

[1]Hanna was driving a loaner 1998 Infiniti I30 owned by Scott Infiniti as the
defendant's 1994 Infiniti Q45 was being repaired.

[2]The Florida drivers' license provided by the defendant to Miller listed Hanna's
residential address as 416 NW 14th Way in Fort Lauderdale.

-2-

14th Way and exited his car and ran toward his residence located next door at 416 NW 14th Way. Hanna was tackled by Miller before the defendant could escape into his house. The defendant was arrested by Miller for failure to follow a lawful command of a police officer and obstruction of justice without violence. An inventory search conducted by Miller of the car driven by the defendant incident to his arrest and at the place of his arrest led to the discovery and confiscation of five (5) kilograms of cocaine and a box inside the trunk, and two (2) cellular telephones from the front passenger seat.

Sergeant Miller, a supervisory officer of the Fort Lauderdale Police Department's patrol division, notified his agency's narcotics unit of the five (5) kilograms of cocaine seizure as mandated by his department's protocol. Detective Andrew Pallen (hereinafter referred to as "Pallen") of the Fort Lauderdale Police Department's narcotics unit responded to 416 NW 14th Way and was advised of the facts related above. When Pallen arrived at the defendant's residence, Hanna was seated wearing handcuffs on the rear seat of Miller's patrol car. Pallen approached the police car housing the defendant for the purpose of identifying himself to Hanna as the lead detective assigned the responsibility of conducting the investigation and to obtain from Hanna biographical information. Pallen, in fact, informed the defendant of his name and Pallen told Hanna that he was a narcotics detective from the Fort Lauderdale Police Department investigating the incident. Pallen asked and the defendant provided

-3-

his name, residential address[3], date of birth, social security number, height, and

weight.[4] Hanna subsequently spontaneously stated the following:

> "I'm not going to make your job any easier unless you make me a good offer. You'll (Detective Pallen) find out who I am and what I've done. Now that you've (the police) caught me again, I'm going to jail for the rest of my life."

Hanna had not been advised of his Miranda rights prior to stating the above.[5]

An anonymous neighbor that witnessed the defendant's arrest and the seizure of

the narcotics from the car he had been driving then called the Fort Lauderdale Police

Department's dispatch and told an operator the location of the defendant's house and

suggested a search of the same be conducted by the police.   A canine trained in the

detection of narcotics and marijuana, Gunner, was summoned to the defendant's

residence to enter open areas surrounding Hanna's home to sniff the air emitting from

within to determine if narcotics were present inside.   Gunner alerted positively to two (2)

common areas of the residence known to emit air:   the exhaust fan of the air-

conditioning unit and the seal around the front door. A search warrant was obtained

---

[3]The address the defendant provided to Pallen as his residence was 416 NW 14th Way, Fort Lauderdale.

[4]Routine booking questions are not considered interrogation because they are not designed to elicit incriminating responses.   Pennsylvania v. Muniz, 496 US 582, 600 (1990).

[5]Recidivists, such as the defendant, are presumed by law to be knowledgeable of their constitutionally guaranteed rights.   United States v. Trussel, 961 F.2d 685, 690 (7th Cir. 1992)(defendant with two prior federal felony convictions and two prior state felony convictions "was no babe in the woods" with respect to the criminal justice system). The defendant's past criminal history is objective *prima facie* proof of his subjective knowledge of his constitutional rights.

-4-

from State Circuit Court Judge Victor Tobin that led to powder cocaine, crack cocaine,

and materials and paraphernalia required to convert powder cocaine into crack cocaine

being found scattered about and seized from Hanna's apartment. Some of the

evidentiary items taken by the police from the defendant's residence included: twenty-

eight thousand, two hundred and fifty-five dollars ($28,255.00) in United States

currency; five (5) baking soda boxes; thousands of plastic bags of various sizes; a

manuscript written by the defendant about his past gambling and pimping activities; a

Colt .45 caliber gun and a box of ammunition; pots, pans and other cooking utensils

containing cocaine residue; and wrappers from four (4) packages of kilograms of

cocaine.

## ARGUMENT

I.   AN INVENTORY SEARCH OF A CAR AFTER THE DRIVER WAS ARRESTED
     AND THE DRIVER WAS NOT THE OWNER OF THE VEHICLE IS A LEGALLY
     PERMISSIBLE SEARCH TO INSULATE A POLICE DEPARTMENT FROM
     LATER FALSE CLAIMS OF IMPROPRIETY AND FRIVOLOUS CIVIL
     LAWSUITS.

The five (5) kilograms of cocaine seized from the trunk of the car driven by the

defendant on January 7, 2000 would be subjected to suppression as an impermissible

extension of the search incident to arrest exception to the search warrant requirement

of the Fourth Amendment if such was the basis for the search. Defense counsel in his

motion to suppress correctly interprets the wrong search warrant exception to the facts

of the instant case. The five (5) kilograms of cocaine were lawfully seized without a

search warrant as part of an inventory search of the car and its contents. The

warrantless inventory search was conducted in conformance with the standardized

-5-

inventory search procedures established by the Fort Lauderdale Police Department, and this search was in compliance with the standards enunciated by the United States Supreme Court in Colorado v. Bertine, 479 U.S. 367 (1987), and Florida v. Wells, 110 S. Ct. 1632 (1990).

In Colorado v. Bertine, 479 U.S. 369, 372 (1987), the Supreme Court held that the fourth amendment is not violated where the police, pursuant to a lawful custodial arrest and in accordance with standardized procedures, impound an individual's vehicle and conduct a warrantless inventory search to satisfy three distinct purposes: (1) protection of the owner's property while it is in police custody; (2) protection of the police from claims of lost or stolen property; and (3) protection of the police from potential danger.

Within the framework of these criteria, however, the Supreme Court has held that police officers may use their discretion to determine both the scope and appropriateness of the inventory search. Florida v. Wells, 110 S. Ct. at 1635. Police officers are not required to use the least intrusive means to secure property lawfully in their possession. Bertine, 479 U.S. at 375. In this regard, police officers are not required to allow a driver the option of avoiding impoundment and the subsequent inventory search by leaving the car in a public parking lot for another licensed driver to retrieve, or by making similar personal arrangements by utilizing a private towing service. Id.

Furthermore, the before-delineated non-investigatory motives will validate an inventory search even when an officer suspects that contraband will be found. See

-6-

United States v. Roberson, 897 F.2d 1092, 1096 (11th Cir. 1990); United States v.

Feldman, 788 F.2d 544, 549-53 (9th Cir. 1986) (inventory search of vehicle not invalid

even though officer suspected weapon inside), cert. denied, 479 U.S. 1067 (1987).

The Eleventh Circuit Court of Appeals has ruled that "the mere expectation of

uncovering evidence will not vitiate an otherwise valid inventory search." Roberson,

897 F.2d at 1096 (citing United States v. Prescott, 599 F.2d 103, 106 (5th Cir. 1979);

United States v. Bosby, 675 F.2d 1174, 1179 (11th Cir. 1982)).

In this case, Sergeant Miller lawfully arrested the defendant Hanna for failure to

follow a lawful command by a police officer and obstruction of justice without violence.

Sergeant Miller reasonably determined that the car should be impounded, because (1)

the vehicle may be needed as evidence to prove the defendant's complicity in the hit

and run accident witnessed by Miller, (2) the vehicle was a loaner car owned by Scott

Infiniti in Lighthouse Point, Florida provided for the defendant's use while his 1994

Infiniti Q45 was repaired, and (3) towing the vehicle to the police station would protect

the dealership's interest in the car by preventing the same from possibly being stolen,

vandalized, or damaged.

Upon the defendant Hanna's arrest on January 7, 2000, Section 124[6] of the Fort

---

[6]Section 124(A)(2)(a) of the Fort Lauderdale Police Department Manual reads:
"In the course of duty of a day to day basis, it is necessary for the protection of the
investigator and the Department to inventory vehicles being towed and/or stored.
Vehicles which are towed as a result of an accident, abandonment, seizure, incident to
an arrest, or otherwise detained in storage, and not in the possession of the owner,
become the responsibility of the impounding investigator. The investigator is liable for
the vehicle, its parts and contents. The contents of the vehicle include, but are not
limited to, all packages and containers located within the passenger compartment, the

-7-

Lauderdale Police Department's Manual provided that the arresting police officer was authorized to impound a vehicle when the driver was arrested. When Sergeant Miller decided for the foregoing reasons to impound the 1998 Infiniti I30 driven by the defendant, the Fort Lauderdale Police Department's standardized policies made Miller responsible for the vehicle: "vehicles which are towed . . . become the responsibility of the impounding investigator. The investigator is liable for the vehicle, its parts, and contents." Section 124(A)(2)(a) of the Fort Lauderdale Police Department's Manual regarding impounded vehicles required that Sergeant Miller insulate the Police Department from liability claims by conducting an inventory search of the vehicle, including the interior and the trunk, as well as closed containers and packages, whether sealed or unsealed, whether locked or unlocked. Id.

Based upon this record, Hanna was lawfully arrested by Sergeant Miller for failure to follow a lawful command of a police officer and obstruction of justice without violence and an inventory search of the vehicle driven by the defendant was subsequently lawfully performed. There exists no evidence that Sergeant Miller conducted the inventory search as a "ruse" to justify a general rummaging for incriminating evidence. Indeed, in accordance with the standards set forth in Bertine and Wells, Sergeant Miller followed his own department's policies that comport with standard police procedures prevailing throughout the country and approved by an

---

trunk, or any other secured area of the vehicle (i.e., glove box, console, under seat, etc.) To insure that liability does not attach for property located within any vehicle or package/container, the contents of said vehicle or package/container, whether locked, opened or closed, shall be ascertained and inventoried." (See attachment)

overwhelming majority of the courts. See Roberson, 897 F.2d at 1096. Moreover, even though there is no suggestion in the record that the standard procedures which Sergeant Miller followed were a pretext concealing investigatory motives, controlling case law has held that the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search. Roberson, 897 F.2d at 1096. Accordingly, this Court should deny the defendant's motion to suppress the evidence seized on January 7, 2000 during an inventory search of the 1998 Infiniti I 30 loaner car driven by the defendant because the inventory search was a proper, permitted, and lawful exercise by law enforcement.

II.    CUSTODIAL STATEMENTS MADE SPONTANEOUSLY ARE NOT SUPPRESSIBLE AS VOLUNTARY STATEMENTS ARE NOT WITHIN THE PROTECTED PURVIEW OF THE MIRANDA OPINION.

The Miranda decision is applicable to a custodial statement made in response to police interrogation. The United States stipulates that the defendant was in police custody at the time he made the statement he seeks to suppress. The defendant's statement, however, is a spontaneous utterance unprotected by the Fifth Amendment of the Constitution of the United States. A spontaneous and unresponsive statement is not within the protective purview of Miranda. United States v. Castro, 723 F.2d 1527, 1530 (11th Cir. 1984). Statements by a suspect that are gratuitous, spontaneous, and voluntary are not the product of interrogation and, therefore, fall outside the scope of Miranda. United States v. Suggs, 755 F.2d 1538, 1541-42 (11th Cir. 1985).

A careful examination and analysis of what the defendant said provides proof positive that the defendant's statement was spontaneous and not made responding to a

-9-

question posed to him by a police officer. It is impossible for one question to trigger

such a response from the defendant. In summation, Hanna told the detective that

Hanna is not going to be cooperative with law enforcement unless given a plea bargain

because the amount of cocaine he was transporting in his vehicle combined with his

extensive criminal record causes him to be subjected to a sentence upon conviction of

life imprisonment.[7]  Five (5) kilograms of cocaine, in and of itself, is not punished by a

prison term of life in either the federal or state court system. Five (5) kilograms of

cocaine and two (2) prior felony drug trafficking convictions pursuant to 21 U.S.C. §851

can cause a defendant upon conviction in the federal court system to be imprisoned for

a life term. The Fort Lauderdale Police Department detective did not know at the time

of Hanna's spontaneous statement of the defendant's extensive criminal history. In

addition, the Fort Lauderdale Police Department detective was unaware of the

existence of the 21 U.S.C. §851 enhanced penalty until after the federal grand jury had

returned its indictment and this case had been reassigned to the undersigned

prosecutor. When the defendant uttered his spontaneous statement, a decision of

whether the case against the defendant would be prosecuted by the federal

---

[7]The defendant's spontaneous statement is factually inaccurate. Since Hanna has only one (1) and not two (2) prior drug trafficking convictions, 21 USC §851 increases his minimum mandatory term of imprisonment upon conviction for the Count I possession with the intent to distribute cocaine charge to a twenty (20) year jail term instead of life imprisonment. If the defendant is also convicted of the Count III charge of 18 USC §924(c) for possessing a firearm during a drug trafficking crime, the enhanced 851 Count I drug offense combined with the Count III offense of 18 USC §924(c) consecutive 5-year imprisonment term equates his minimum mandatory term of imprisonment upon conviction to twenty-five (25) years.

government had not been rendered. Further, at the moment of the defendant's spontaneous statement, a search of the defendant's residence had not yet occurred that led to the discovery of a crack cocaine manufacturing plant operating within Hanna's house.

The defendant's conscience was the sole custodian of the information contained within his spontaneous statement. The investigating detective at the time the defendant uttered his stream of guilty conscience had not searched Hanna's residence and found the crack cocaine manufacturing plant operating within, possessed no knowledge of the defendant's criminal record or the potential aggravating effect the same could have on his prison term, and he was unaware that the federal government would adopt the case against Hanna for federal prosecution. The detective cannot ask about what he does not know to exist.

The defendant's sole protection was to not say anything. The defendant, instead, chose to talk and, like everyone in society, he now must accept the consequences of his spoken words. Loose lips can sink ships and cause defendants to be found guilty. The Constitution was not drafted by our Founding Fathers to protect an accused person's from the stupidity of their own acts.

-11-

III. PROBABLE CAUSE EXISTED TO SUPPORT THE ISSUANCE OF A
SEARCH WARRANT FOR THE DEFENDANT'S RESIDENCE BECAUSE
OF THE DEFENDANT'S OWN ACTS OF FERVENT FLIGHT TO HIS
RESIDENCE, THE PRESENCE OF 5 KILOGRAMS OF COCAINE
WITHIN THE TRUNK OF THE CAR THE DEFENDANT WAS DRIVING,
THE INTENDED DESTINATION OF SAID NARCOTICS BEING THE
HOME SEARCHED, AND THE ANONYMOUS NEIGHBOR'S
TELEPHONE CALL TO THE POLICE DISPATCHER CORROBORATED
BY THE POSITIVE ALERT OF A CANINE TRAINED IN THE DETECTION
OF NARCOTICS TO THE PRESENCE OF THE SAME WITHIN THE
DEFENDANT'S RESIDENCE.

Probable cause substantively sufficient to justify the issuance of a search

warrant exists where the affiant's knowledge and corroborative information are of the

magnitude and trustworthiness to cause a man of reasonable caution to believe a crime

has been, is being, or is about to be committed, and that seizable property evidencing

criminal conduct can be located at the place or found upon the individual to be

searched. Brinegar v. United States, 338 U.S. 160 (1949); Carroll v. United States, 267

U.S. 132, 162 (1925). See Zurcher v. Stanford Daily, 436 U.S. 547, 559 (1978)

("Reasonableness is the overriding test of compliance with the Fourth Amendment.");

United States v. Melvin, 596 F.2d 492, 495 (1st Cir.) cert. denied, 444 U.S. 837 (1979)

("The [term] 'probable cause' is less stringent than may likely not or by a

preponderance . . . 'Reasonable cause' is perhaps closer to what is [intended]").

Although proof of criminal activity is not mandated, greater than mere good faith and

suspicion are necessary. Brinegar v. United States, 338 U.S. at 187, 177; United

States v. Williams, 594 F.2d 86 (5th Cir. 1079) cert. denied, 101 S. Ct. 946 (1981);

United States v. Tasco, 586 F.2d 1068 (5th Cir.)

Ample information that was adequately credible existed to formulate the

-12-

probable cause basis for the issuance of a search warrant and a judge so found. (See

attachment) First and foremost, the five (5) kilograms of cocaine found and confiscated

from the trunk of the car the defendant had been driving provided conclusive proof of

the defendant's involvement in the distribution of large quantities of cocaine. The value

of the five (5) kilograms of cocaine was in excess of seventy-five thousand dollars

($75,000.00). The sheer weight of the quantity of drugs transported by the defendant

within the car he was driving lends credence to Pallen's suspicion that other drugs,

evidence of distribution, drug ledgers, or a combination thereof would be found within

the defendant's residence. The defendant intended to resale five (5) kilograms of

powder cocaine, not five (5) grams of crack cocaine. Furthermore, the intended

destination for the five (5) kilograms of cocaine was the defendant's residence.[8]

Other acts committed by the defendant on January 7, 2000 that supplied

probable cause for the issuance of a warrant to search the defendant's residence

included:

The defendant failed to stop for a car accident he caused and stopped his
fleeing vehicle only after a police officer that witnessed the hit and run
accident pursued the defendant's vehicle and activated his marked unit's
emergency lights.

The defendant fled from the traffic stop without his driver's license while
the police officer was distracted gathering information from the victim of a
hit and run accident caused by the defendant.

The defendant drove his vehicle in an erratic manner toward his residence
to try to lose the police officer pursuing in his marked car.

---

[8]When questioned by Miller as to why he was in such a hurry, the defendant
said: " I live just over there (gesturing in a northern direction) and I have to get home."

-13-

The defendant parked the car he was driving and ran toward his house
but was apprehended before reaching the same.

The defendant's fervent obsession with returning to his home lends credence to

the detective's belief that contraband was contained therein and, as demonstrated by

the defendant's actions, Hanna was determined to enter the residence to destroy the

same before the police conducted a search of his house and found inside evidence of

his drug trafficking and arrested him for the violations of law.

The foregoing was not the sole basis for the issuance of a search warrant. An

anonymous neighbor that witnessed the defendant's arrest and the seizure of the

narcotics from the car he had been driving called the Fort Lauderdale Police

Department's dispatch and told an operator the location of the defendant's house and

suggested a search of the same be conducted by the police. Citizens concerned

enough about ridding the community of undesirable criminal elements can supply the

factual foundation for a search warrant affidavit if the information provided is capable of

corroboration. United States v. Rasor, 599 F.2d 1330 (5th Cir. 1979).

Besides the foregoing cited acts of the defendant, information corroborative of

the anonymous neighbor's telephone call to the police dispatcher was supplied by a

dog. A canine trained in the detection of narcotics and marijuana was summoned to

the defendant's residence to enter open areas surrounding Hanna's home to sniff the

air emitting from within to determine if narcotics were present inside. The canine

alerted positively to two common areas of the residence known to emit air: the exhaust

fan of the air-conditioning unit and the seal around the front door. The singular act of a

-14-

positive alert of a canine trained to detect the presence of drugs is sufficient to serve as the probable cause basis for the issuance of a search warrant. United States v. Banks, 3 F.3d 399, 402 (11th Cir. 1993), cert. denied, 114 S. Ct. 1097 (1994)("Our circuit has recognized that probable cause arises when a drug-trained canine alerts to drugs.")

Since the probable cause basis for the search warrant included a positive canine alert for the presence of drugs within the house searched plus the defendant's criminal conduct of that day, the obsessive behavior Hanna evidenced toward reaching his residence, and the corroborated anonymous caller's tip, the defendant's motion to suppress the search warrant as deficient of probable cause is barking up the wrong tree.

## CONCLUSION

Wherefore, for the foregoing reasons, the United States of America respectfully requests that this Honorable Court deny the defendant's motions to suppress physical evidence and statements.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____

DONALD F. CHASE, II
ASSISTANT UNITED STATES ATTORNEY
Court No. A5500077
500 East Broward Boulevard, Suite 700
Fort Lauderdale. Florida 33394
Tel: (954) 356-7255
Fax: (954) 356-7336

-15-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was delivered by

United States facsimiled and mail this 25th of August 2000 to Don Cohn, Esq., 1504

NW 14th Street, Miami, Florida 33125.

DONALD F. CHASE, II
ASSISTANT UNITED STATES ATTORNEY

-16-

# 124 TOWED VEHICLES

## A. GENERAL INFORMATION

1. Tow Slips

   a. The Investigator (sworn or civilian employee) shall remain with the vehicle until the wrecker arrives.

   b. The Investigator shall supply his own tow slip, wrecker drivers are not required to carry them.

   c. Since the Auto Theft Squad no longer inspects towed vehicles at the wrecker compound, it is extremely important that the V.I.N. be accurately entered on the tow form.

   d. Complete the entire Tow Slip form and document the following information:

      (1). Time;
      (2). Date;
      (3). Location;
      (4). Requesting member and CCN;
      (5). Reason for removal or tow;
      (6). Towing service;
      (7). Location of the vehicle; and
      (8). Notification (or attempts) of registered owner; and
      (9). Documented inventory of contents.

2. Vehicle Inventories

   a. In the course of duty on a day to day basis, it is necessary for the protection of the Investigator and the Department to inventory vehicles being towed and/or stored. Vehicles which are towed as a result of an accident, abandonment, seizure, incident to an arrest, or otherwise detained in storage, and not in the possession of the owner, become the responsibility of the impounding Investigator. The Investigator is liable for the vehicle, its parts and contents. The contents of the vehicle include, but are not limited to, all packages and containers located within the passenger compartment, the trunk, or any other secured area of the vehicle (i.e., glove box, console, under seat, etc.) To insure that liability does not attach for property located within any vehicle or any package/container, the contents of said vehicle or package/container, whether locked, opened or closed, shall be ascertained and inventoried.

   b. Vehicle inventories are to be done jointly by the Investigator and wrecker driver. The tow truck driver is to sign the inventory and the top copy turned in to Records.

    c.  All items shall be listed on the inventory under "Unusual Accessories". If more space is needed, use the narrative section of the form. (Note: each individual item need not be inventoried, i.e., toolbox with miscellaneous tools, or suitcase with clothing, etc).

    d.  The offense report shall list all items seized from the vehicle as evidence. Any items of questionable ownership shall be placed into Evidence for release upon proof of ownership.

3.  Holds

    a.  When a "hold" is placed on a vehicle, the Investigator shall indicate the specific reason for the "hold". If another division requests a "hold", the name of the person making the request shall be included in the report. When a "hold" is placed on behalf of another section (Auto Theft, Hit & Run, Burglary, etc.) the Investigator shall insure that a copy of the offense report is immediately forwarded to the proper squad.

    b.  A "hold" on a vehicle may be released by:

        1.  The arresting or impounding Investigator.

        2.  The division or section for which the "hold" was placed.

        3.  Supervisory personnel.

    c.  Holds will automatically be released after seven (7) calendar days unless a hold extension is requested by the follow up investigator.

4.  Tow Book

    a.  Whenever an Investigator tows an abandoned vehicle, he must call Communications as soon as is practical and have the vehicle entered in the Tow Book. Investigators must tell the complaint operator to mark the tow "ABANDONED".

    b.  When a vehicle is towed as a result of police activity such as an accident investigation or an arrest, AND the OWNER of the vehicle is not present, the Investigator will attempt to notify the owner of the location of the vehicle. Details of such notification will be included in the narrative of the police report. When the owner cannot be notified, the Investigator will call Communications as soon as possible and have the vehicle entered in the Tow Book.

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

## SEARCH WARRANT

STATE OF FLORIDA.          )
                           ) SS
COUNTY OF BROWARD          )

IN THE NAME OF THE STATE OF FLORIDA TO ALL AND SINGULAR THE SHERIFF AND/OR
DEPUTY SHERIFFS OF BROWARD COUNTY, AND/OR POLICE OFFICERS OF THE CITY OF
FORT LAUDERDALE POLICE DEPARTMENT, IN AND FOR BROWARD COUNTY, FLORIDA:

WHEREAS, Detective Andrew Pallen, as a law enforcement officer of the City of Fort Lauderdale
Police Department, County of Broward, State of Florida, has this day made application before me
for a Search Warrant, said application being supported by the General Affidavit and Application
for Search Warrant of 416 NW 14 Way, Fort Lauderdale, Broward County, Florida, wherein it is
alleged that the Affiant has reason to believe and does believe that on the premises and curtilage
described as:

> 416 NW 14 Way, Fort Lauderdale, Broward County, Florida, a single story,
> single family dwelling of CBS construction. It is the fifth structure north of NW
> 4 Street on the east side of NW 14 Way. The structure has a brown shingle
> roof and the body is painted beige. The numbers "416" are displayed in four
> inch high black characters on front of the structure and are clearly visible from
> NW 14 Way. Furthermore your Affiant can identify the aforementioned
> structure.

THAT the following grounds for issuance of a Search Warrant, as required by Chapter

933 exist, to-wit:

> Property constituting evidence relevant to proving that a felony has been
> committed is located therein and the laws relating to narcotics and drug abuse
> are being violated therein. Violation of the controlled and dangerous
> substances laws of the State of Florida.

AND THAT the law of the State of Florida has been violated, to-wit:

> Distribution, possession, and concealment of controlled substances as defined
> in Florida Statutes, Chapter 893, amended and defined.

AND THAT the following property may be found therein, to-wit:

> Cocaine, and any records of the use, storage, and sale of cocaine. Any
> papers tending to show control of the premises and/or the cocaine and any drug related
> paraphernalia. Also, any monies derived from the sale of cocaine.

IN THE CIRCUIT COURT OF THE SEVENTEENTH
JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

**GENERAL AFFIDAVIT AND APPLICATION FOR SEARCH WARRANT**

STATE OF FLORIDA     )
                  ) SS

COUNTY OF BROWARD  )

BEFORE THE UNDERSIGNED  _Victor  Tobin_

Judge of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, State of
Florida, personally came Detective Andrew Pallen, who after being first duly sworn deposes and
says:

THAT he is duly and lawfully appointed law enforcement officer the City of Fort
Lauderdale, County of Broward, State of Florida, and has all the powers and duties of a law
enforcement officer in and for the County of Broward, State of Florida.

THAT he has probable cause to believe, and does believe that on the premises and
curtilage described as:

> 416 NW 14 Way, Fort Lauderdale, Broward County, Florida, a single story,
> single family dwelling of CBS construction. It is the fifth structure north of
> NW 4 Street on the east side of NW 14 Way. The structure has a brown
> shingle roof and the body is painted beige. The numbers "416" are
> displayed in four inch high black characters on front of the structure and are
> clearly visible from NW 14 Way. Furthermore your Affiant can identify the
> aforementioned structure.

THAT the following ground for issuance of a Search Warrant, as required by Chapter 933
exist, to-wit:

> Property constituting evidence relevant to proving that a felony has been
> committed is located therein and the laws relating to narcotics and drug
> abuse are being violated therein.

AND THAT the law of the State of Florida has been violated, to-wit:

> Distribution, possession and concealment of controlled substances
> as defined in Florida Statutes, Chapter 893, as amended and
> revised.

AND THAT the following property may be found therein, to-wit:

> Cocaine, and any records of the use, storage, and sale of
> cocaine. Any papers tending to show control of the premises
> and/or the cocaine and any drug related paraphernalia. Also, any
> monies derived from the sale of said cocaine.

YOUR AFFIANT believes and has probable cause to believe that the aforesaid property may be found within the above-described premises and curtilage for the following reasons:

On January 7, 2000, Sergeant Frank Miller was patrolling the area of West Broward Boulevard and I-95 in the city of Fort Lauderdale in a marked police unit. Sergeant Miller observed a traffic crash. Sergeant Miller obtained a driver's license from Lionel Hanna who was sole occupant of one of the involved vehicles. When Sergeant Miller turned to get the other driver's information, Lionel Hanna fled the scene of the crash in a 1998 white Infiniti, Florida registration J2429T. Sergeant Miller followed the vehicle to the 400 block of NW 14 Way. Lionel Hanna abandoned the 1998 Infiniti in the parking lot of the house adjacent to 416 NW 14 Way and attempted to flee into his residence, 416 NW 14 Way, the address displayed on Lionel Hanna's Florida driver's license. Lionel Hanna was apprehended by Sergeant Miller before entering the house.

An inventory search of the 1998 Infiniti revealed five (5) kilograms of powdered cocaine, which was Valtox field-tested positive for the presence of cocaine by Sergeant Miller.

While officers were in the scene an anonymous concerned citizen called the Fort Lauderdale Police dispatch center and advised that officers were out with a subject who had additional narcotics concealed in his house and the anonymous caller described 416 NW 14 Way.

Officer Joyce Fleming and her certified narcotics detection canine responded to 416 NW 14 Way. Officer Fleming ran the narcotics detection canine around the exterior of 416 NW 14 Way. The narcotics detection canine gave an indication of the odor of narcotics emitting from the bottom seam of the front door of 416 NW 14 Way. The narcotics detection canine also displayed behavioral changes when passing the air conditioning unit indicating of the possibility of the odor of narcotics

A records check revealed that Lionel Hanna has an extensive arrest history for narcotics offenses including a prior conviction for narcotics trafficking. Records check revealed that Lionel Hanna and Lysnader Hanna are the only occupants of 416 NW 14 Way.

Based on the aforementioned facts Your Affiant believes that more narcotics are concealed in 416 NW 14 Way.

WHEREFORE, your Affiant hereby makes application for a Search Warrant authorizing the Sheriff and/or Deputy Sheriffs of Broward County and/or police officers of the City of Port Lauderdale Police Department of Broward County, State of Florida, with proper and necessary assistance, to search the above-described premises and curtilage in the daytime/nighttime or on Sunday, to search those who shall be suspected of being connected with violation of the law as heretofore stated above, and to seize any and all of the aforesaid property found by virtue of such Search Warrant and to bring said property and/or person(s) arrested before the Magistrate or some other court having jurisdiction of the offense.

Detective Andrew Pallen, AFFIANT

SWORN TO AND SUBSCRIBED before
me at Fort Lauderdale, Broward County,
Florida, this __ day of _____
A.D. 2000.

JUDGE OF THE CIRCUIT COURT